People of the State of Illinois, ex rel. James V. Cunningham, State's Attorney of Peoria County, Illinois, Plaintiff-Appellee, v. James Lewis, et al., Defendant-Appellant.

Gen. No. 68–36.

Third District.

April 25, 1969.

Robert E. Manning, Jr., Acting State's Attorney, of Peoria, for appellant.

Daniel D. Glasser, of Chicago, for appellee.

STOUDER, P. J.
This is an appeal from an order of the Circuit Court of Peoria County which found the Respondent-Appellant James Lewis, guilty of civil contempt for violation of a permanent injunction and sentenced the respondent to serve one year in the county jail.

On September 6, 1961, on the relation of the State's Attorney, a permanent injunction was issued by default by the Circuit Court of Peoria County against the respondent James Lewis. The permanent injunction restrained Lewis from owning or operating any premises within the jurisdiction of the court for the purposes of prostitution, etc., including specifically, the premises at 610 South West Jefferson, Peoria, Illinois. On October 22, 1967, the State's Attorney filed a petition for a rule on respondent to show cause why he should not be held in contempt of court for violation of the permanent injunction. The petition alleged that the respondent Lewis had an equitable interest in a house of assignation, being the premises at 610 South West Jefferson Street, Peoria, Illinois. The petition also alleged that the respondent Lewis was present in such house of assignation on January 11, 1967, and October 20, 1967, while said premises were being used as a house of prostitution.

Hearing on the rule was set for 10 o'clock a. m., January 29, 1968. Lewis did not appear personally at that time although his attorney indicated that Lewis had been notified of the hearing by certified mail. The hearing was recessed until the afternoon but again Lewis did not personally appear. The hearing however commenced in Lewis's absence and he did not personally attend the hearing until the last witness for the State had nearly finished his testimony.

After hearing, the respondent Lewis was found guilty of violating the permanent injunction and sentenced to serve one year in the county jail, from which order he has appealed. Respondent has made several assignments of error. However, the only alleged error which we believe we need consider is his contention that the State failed to sustain its burden of proof in that it failed to produce any evidence in support of an essential element of its case. This was respondent's argument in the trial court and it is again renewed here, both parties conceding that it is the principal issue of the case.

The State presented the testimony of seven witnesses and certain documentary exhibits, the respondent making no objection to any of the evidence so presented. The respondent introduced no evidence. Although it may be said that the facts are undisputed, the reasonable inferences to be drawn therefrom are disputed and constitute the central issue of this case.

Since the sufficiency of the evidence is the principal issue in this case a summary of the significant evidence relied upon by the State to support its position is required.

Seven persons testified at the hearing, namely an attorney, four police officers, the Clerk of the Court and a patron.

Two police officers testified that on January 11, 1967, they executed a search warrant (unrelated to prostitution) for the premises in question. One officer testified

that in searching the upstairs he observed a couple having sexual intercourse. Each officer saw respondent Lewis in the kitchen drinking coffee with other persons. Neither officer testified to any conversations with Lewis or as to any conduct of Lewis except his presence.

One Robert Angel, a tugboat employee, testified that on October 19, 1967, he went to the premises for the purpose of prostitution, was solicited for that purpose by one Pam Miller, and that the intended services were rendered for which he paid $20. Angel's testimony is devoid of any reference to respondent Lewis. After he left the premises he was apparently questioned by the police, no reason therefor appearing from the record, and as a consequence a search warrant was issued based on prostitution.

The next two police officers testified that they executed the search warrant heretofore referred to, and conducted a search of the premises on October 20, 1967. So far as Lewis is concerned they testified that he again was present in the kitchen with other persons but no conversations or other conduct are described. Apparently some men in the living room were arrested as "frequenters."

The Clerk of the Court testified concerning certain records in his office namely injunction orders concerning the premises in question and two other premises, and also identified the search warrant served on October 20, 1967.

In summarizing the evidence presented by the testimony of the six witnesses it can be said that Lewis was on the premises on January 11 and October 20, 1967, and that prostitution did take place on the premises with Lewis's knowledge thereof. However, there is nothing in such evidence from which it can be inferred that Lewis exercised any control or ownership of the premises, was responsible for the prostitution which occurred or that his presence was other than that of a friend, guest or

customer. The State appears to concede that this evidence standing alone would be insufficient to justify a finding that respondent violated the injunction, lacking as it does any indication that Lewis owned, operated or controlled the premises.

This brings us to a consideration of the testimony of Walter Winget, an attorney. Although he testified first we are considering his testimony last since it is the evidence principally relied upon by the State to support its contention that Lewis had an equitable interest in the property. He testified that prior to 1958 the premises were owned by a Dr. Dixon. In 1958 the Dixons entered into an agreement for warranty deed with respondent Lewis for the purchase of the property. The agreement contemplated monthly payments and included a provision that the interest of the purchaser Lewis could not be transferred without the consent of the sellers. Dr. Dixon died in 1965, his widow was appointed executor of his estate, and the witness thereafter represented such executor. In November, 1967, preparatory to instituting proceedings to forfeit the contract for nonpayment, the witness, in searching the real estate records of Peoria County, discovered a quitclaim deed from Lewis to Clarence Short of Farmington, Illinois. The quitclaim deed indicated that it had been executed and acknowledged in 1962 but was not recorded until January, 1967.

In addition to the foregoing competent evidence the witness also testified to some hearsay facts (without objection). Such testimony was to the effect that the Dixons had no knowledge that the Jefferson Street premises were used for the purpose of prostitution, that they had not consented to such transfer, that payments on the contract had been made by or in behalf of Lewis prior to 1965 and that no payments had been made thereafter. It is obvious that these are facts of which the witness had no personal knowledge but in any event such facts are immaterial since they have no tendency to prove

or warrant any inference of respondent's interest in the property in 1967.

The State's Attorney, in his closing argument, contended, "Mr. Lewis is the record owner of this title under an agreement for a Warranty Deed and, does have an interest in it, which as one of the witnesses testified yesterday; which at the present time is being foreclosed and the agreement for the purchase of the property was signed by Mr. Lewis and he had no right under the contract to sub-assign it and therefore, the contract is still binding upon him and he therefore is the equitable owner of the title to the premises at 610 S. W. Jefferson Street." The State, in its comments on Winget's testimony in its brief, states, "The State offered evidence in the person of Attorney Winget that James Lewis bought the concerned premises in 1958. Also, that one of the terms of the agreement was that the property was not assignable by Lewis until paid for. Lewis did tender a Quit Claim Deed to Clarence Short, which was not recorded until January 1967. But Lewis is the only person who ever made any payments to Mr. Dixon on the property. These circumstances are some evidence of the fact that, on the dates of January 11, 1967, and October 20, 1967, when James Lewis was seen in the house at 610 Southwest Jefferson, that he exerted some actual, equitable control over that property."

From the brief of the State it would appear that the claim made in final argument that Lewis was "the record owner" or the "equitable owner," has been reduced to a claim that Lewis "had some actual, equitable control." This latter conclusion appears to be based on their assertion that Lewis was the only person who ever made any payments to Dr. Dixon on the property. However, there is no testimony supporting such assertion. Not even Mr. Winget in his hearsay testimony regarding payments, made any such statement. It is our conclusion that there is nothing in the testimony of Winget tending to prove or

287

from which it can be inferred that Lewis had any interest in the property in 1967. Since Winget's testimony was the only evidence bearing on this point, it is also our opinion that the State failed to introduce any evidence concerning an essential element of its case namely that the respondent Lewis owned, operated or controlled the premises in question.

It appears to us that the trial court may have been unduly influenced by the reputation of the premises, the reputation of Lewis, as well as Lewis's somewhat cavalier attitude toward the contempt proceedings. However, such factors are not a substitute for evidence and the State, having failed to introduce evidence in support of an essential element of its case, we have no alternative except to reverse the order of the trial court.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is reversed.

Judgment reversed.

ALLOY and RYAN, JJ., concur.